# In the United States Court of Federal Claims

No. 20-589
Filed: April 27, 2022

| | |
|---|---|
| ALVER VALLES-PRIETO, | ) |
| Plaintiff, | ) |
| v. | ) |
| THE UNITED STATES, | ) |
| Defendant. | ) |

*Danielle Desaulniers Stempel*, Hogan Lovells, Washington, DC, for plaintiff.

*Kyle Shane Beckrich*, U.S. Department of Justice, Civil Division, Washington, DC, for defendant.

**OPINION AND ORDER**

***SMITH*, Senior Judge**

This action is before the Court on the parties' Cross-Motions for Judgment on the Administrative Record. On May 12, 2020, plaintiff Alver Valles-Prieto filed a complaint, challenging a decision by the Air Force Board for the Correction of Military Records ("AFBCMR" or "Board") denying him disability retirement pay and benefits. *See* Complaint at 1, 19, ECF No. 1 [hereinafter Compl.]. For the following reasons, the Court grants-in-part plaintiff's Motion for Judgment on the Administrative Record and denies defendant's Cross-Motion for Judgment on the Administrative Record.

## I. Background

### A. Military History

Plaintiff Alver Valles-Prieto served in the United States Air Force ("USAF") as an electrical/environmental systems journeyman from February 15, 2005 until his separation on January 31, 2015. Administrative Record 2, 33, 93 [hereinafter AR]. At the time of his enlistment, plaintiff was in good health and did not exhibit any symptoms of a mental-health disorder. AR 8, 36–41. During his military career, plaintiff performed his duties at average or above-average proficiency and received several commendations for his service. AR 7, 33, 42–53. However, the record demonstrates that plaintiff began suffering from a depressive disorder in the course of his service. AR 12, 64, 225.

On February 1, 2013, after almost eight years in the USAF, plaintiff consulted his primary health-care manager and reported having depression for the preceding two years. AR 55–60, 225. Plaintiff also demonstrated indicators for depression based upon a self-reporting Patient Health Questionnaire and stated that he was in severe pain. AR 58–59. He was prescribed an anti-depressant and was recommended to follow-up with a mental-health clinic. AR 57, 225. That same day, plaintiff went to the mental-health clinic at Seymour Johnson Air Force Base for an initial consultation, during which he again reported symptoms of depression. AR 54, 225. On February 6, 2013, following a full examination and psychiatric evaluation with a licensed clinical social worker, plaintiff was diagnosed with a depressive disorder. AR 64–65. The medical record reflects that plaintiff exhibited a "non clinical level of distress" and with a safety risk level of "not elevated." AR 64–65. The clinical social worker recommended follow-up appointments, but plaintiff did not attend any further scheduled appointments. AR 225. However, plaintiff continued to receive medication management services through his medical provider for refills of his anti-depressant. AR 225. Ultimately, plaintiff's mental-health case was closed on December 31, 2013. AR 225.

In January 2014, plaintiff's security clearance was terminated, preventing plaintiff from fully performing his duties in the USAF. AR 2, 101; *see* AR 13. The Security Termination Statement in the Administrative Record does not explain why plaintiff's security clearance was not renewed. AR 2, 101. In August 2014, a clinical social worker from the Seymour Johnson Family Advocacy Program Family Advocacy Clinic ("FAP") reviewed plaintiff's medical records and issued a report. AR 4, 76. The report states that the purpose of plaintiff's visit was to receive a medical certificate and observation for abuse/neglect. AR 76. The report also states that "Clearance [was] NOT recommended." AR 76.

In October 2014, plaintiff sought treatment for sleep issues due to a shift change in his work schedule and was prescribed a sleep aid. AR 200, 226. At the time, he denied having anxiety and tested negative for depression. AR 226. However, in November 2014, plaintiff contacted the mental-health clinic and reported that his commander had signed a promotion point worksheet to "bar his reenlistment." AR 226. Plaintiff then went to the clinic to address concerns related to the occupational stress of not being able to re-enlist. AR 226. The clinic physician assessed plaintiff's safety risk level and determined that plaintiff is "currently at clinically significant risk," though this risk was "not imminent." AR 226. The physician also found "no significant safety/duty limiting/restrictions concerns . . . that would be necessary to notify [plaintiff's] commander." AR 226. Plaintiff was scheduled for a follow-up appointment but did not attend. AR 226.

On January 23, 2015, plaintiff was denied re-enlistment and transferred to the Air Force Reserve. AR 93–94. Plaintiff's separation form indicates that he was considered, but not selected, for reenlistment and that his separation was due to "non-retention on active duty," without further explanation. AR 93–94. On January 29, 2015, a physician at Seymour Johnson Air Force Base evaluated plaintiff regarding whether he was medically qualified to serve in the Air Force Reserve. AR 77–78, 226. The evaluating physician noted potentially disqualifying information in his FAP report and mental-health records, so the physician recommended against clearance to the Reserve "based on Mental Health notes." AR 77, 226. On February 1, 2015, plaintiff sought an explanation of his clearance denial with an Air Force psychiatrist. AR 79,

226. Upon review of plaintiff's medical records, the psychiatrist noted plaintiff's "historical [diagnosis] of Depressive D/O [Not Otherwise Specified ("NOS")] . . . in 2013 with subsequent pharmacotherapy," the "additional presentation . . . in 2014 with no [diagnosis]" but "noted elevated risk for self harm," and "subsequent non-compliance with recommended [follow-up] for psychotherapy." AR 79. The psychiatrist's report states that plaintiff "acknowledged these events [as the] basis for non-clearance." AR 79, 226.

Plaintiff remained in the Air Force Reserve until January 31, 2018, when he was honorably discharged. AR 3. While in the Air Force Reserve, plaintiff began receiving mental-health treatment services through the Department of Veterans Affairs ("VA"). AR 226. On December 3, 2015, the VA assigned plaintiff a 30 percent disability rating under the Veterans Affairs Schedule for Rating Disabilities ("VASRD") for his depressive disorder, effective February 1, 2015. AR 66–68, 226. The VA determined plaintiff's overall disability rating at 50 percent based on other physical conditions. AR 70, 226. In April 2018, plaintiff's VA treatment ended, shortly after his honorable discharge from the Air Force Reserve. AR 226.

### B. Military Disability Evaluation System

Plaintiff requests that this Court set aside the AFBCMR's decision and order the Board to correct his military records to reflect his entitlement to medical retirement. *See* Motion for Judgment on the Administrative Record [hereinafter Pl.'s MJAR] at 33, ECF No. 25. Military retirement for disability is governed by 10 U.S.C. § 1201. In relevant part, a Service member may receive disability retirement if they are found "unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay[,]" and that

> (1) based upon accepted medical principles, the disability is of a permanent nature and stable;
> (2) the disability is not the result of the member's intentional misconduct or willful neglect, and was not incurred during a period of unauthorized absence; and
> (3) [*inter alia*] —
> . . .
> (B) the disability is at least 30 percent under the standard schedule of rating disabilities in use by the Department of Veterans Affairs at the time of the determination; . . .

10 U.S.C. § 1201(a)–(b); *see also Chambers v. United States*, 417 F.3d 1218, 1223 (Fed. Cir. 2005) (discussing 10 U.S.C. § 1201(a)). A Service member is considered "unfit" when "the evidence establishes the member, due to disability, is unable to reasonably perform duties of his or her office, grade, rank, or rating." Department of Defense Instruction ("DoDI") 1332.18, Appx. 2 to Encl. 3, § 2.a (Aug. 5, 2014); *see also* Air Force Instruction ("AFI") 36-3212 § 8.20 (Feb. 2, 2006) (stating that "[t]he sole standard to be used in making determination of unfitness due to physical disability shall be unfitness to perform the duties of the member's office, grade, rank or rating because of disease or injury.").

The Integrated Disability Evaluation System ("IDES") is the process where Service members are evaluated regarding whether they are fit for duty, and if they are found unfit,

Service members are assigned a percentage disability rating. *See generally* DoDI 1332.18, Appx. 1 to Encl. 3, § 1; *see also* AFI 36-3212 § 1.1. A Service member's disability rating determines the appropriate benefits owed to them, including whether they should receive disability retirement. *See* 10 U.S.C. §§ 1201(b)(3)(B), 1203(b)(4)(B).

In this case, plaintiff argues that he was entitled to a referral into IDES prior to his separation from the Air Force. Pl.'s MJAR at 16–30. Under Department of Defense ("DoD") regulations, an IDES referral must be made within one year from the date of diagnosis of one or more medical conditions that "prevent the Service member from reasonably performing the duties of their office, grade, rank, or rating." DoDI 1332.18, Appx. 1 to Encl. 3, § 2. Similarly, Air Force regulations require an IDES referral when a condition causes "or is expected to cause significant duty impairment or limitations for greater than one year." AFI 48-123, § 5.3.12 (Sept. 24, 2009); *see also* AFI 48-123, § 5.3.12.2.1 (providing that IDES referral is required for a mental condition "expected to have persistent duty impairment (more than 1 year despite treatment)"). Service members cannot self-refer into the IDES, but the military branches are required to refer eligible Service members who meet the referral criteria for IDES. *See* DoDI 1332.18, Appx. 1 to Encl. 3, § 2.

### C. Procedural History

In 2018, plaintiff applied for relief from the AFBCMR to correct his military records to reflect medical-retirement status. AR 15, 263. Plaintiff argued that, prior to separation from the USAF, he should have been referred to the IDES, where a medical evaluation board would have found him unfit for continued active service, and he would have received medical retirement based on his depressive disorder. AR 15, 263. In reviewing plaintiff's application, the AFBCMR requested advisory opinions from a Medical Advisor and Mental Health Advisor. AR 12–14. The Medical Advisor found that plaintiff's physical ailments did not render him unfit for duty, but that "there appears to have been a relationship between the declination/revocation of [his] security clearance . . . and some concerns with his mental wellness, due to the implicit risks his [depressive disorder] imposes." AR 202. The Medical Advisor therefore recommended "an opinion from the Mental Health Advisor regarding the [plaintiff]'s fitness to serve, from a mental health perspective." AR 202; *see* AR 13. The Mental Health Advisor concluded that plaintiff's depressive disorder was not unfitting and stated that he was denied a security clearance because "he requested treatment, but failed to follow through with treatment, reported himself to be at risk of self-harm, was not being responsible with his finances as well as not passing his [physical fitness test]." AR 205, 264. Based on the advisory opinions, the AFBCMR summarily denied plaintiff's application for relief. AR 11–14.

Plaintiff challenged the AFBCMR's decision in this Court and moved for judgment on the Administrative Record. *See* Plaintiff's Motion for Judgment on the Administrative Record, ECF No. 8. In response, defendant sought a voluntary remand to the AFBCMR to reconsider plaintiff's application and "address in particular the lack of clarity in the Mental Health Advisor's report." *See* Defendant's Motion for a Voluntary Remand at 5, ECF No. 9; AR 265. This Court granted remand to resolve "serious concerns due to apparent erroneous statements of fact" made in the Mental Health Advisor's opinion. *See* Order Remanding Case at 2, ECF No. 13; AR 269.

On remand, the AFBCMR reconsidered and denied plaintiff's application again, finding that there was insufficient evidence that he met the criteria to be referred into IDES. AR 2–9. The AFBCMR again relied on an advisory opinion from a Mental Health Advisor. AR 227. In contrast to the previous advisory opinion, this Mental Health Advisor noted the lack of a clear causal connection between plaintiff's mental-health treatment and his loss of security clearance. AR 228. According to the Mental Health Advisor, only a small percentage of Service members lose security clearances due to their mental-health condition, and nothing in the record indicated that plaintiff experienced mental-health challenges that would place him in that percentage. AR 228. The Mental Health Advisor concluded that there was insufficient evidence to state that plaintiff's non-retention was due to his mental-health condition as opposed to work performance issues or other information missing from the record. AR 227. The AFBCMR also sought an advisory opinion from the Air Force Personnel Center ("AFPC"). AR 6. The AFPC recommended denying plaintiff's application because he was unable to demonstrate that he was discharged from the Air Force for losing his security clearance. AR 6. The AFPC determined that "[t]here is no indication that the commander denied further retention for [plaintiff] not having a security clearance or having one removed." AR 248. Rather, the AFPC noted that the reason for separation was "non-retention as a result of the commander's decision." AR 248. In its decision, the AFBCMR accepted the Mental Health Advisor and AFPC advisory opinions and denied plaintiff's application for a second time. AR 7–8.

On April 28, 2021, plaintiff filed an amended complaint. *See* Amended Complaint, ECF No. 23. On June 18, 2021, plaintiff filed its Motion for Judgment on the Administrative Record. *See* Plaintiff's Motion for Judgment on the Administrative Record [hereinafter Pl.'s MJAR], ECF No. 25. On August 9, 2021, defendant filed its Cross-Motion for Judgment on the Administrative Record and Response. *See* Defendant's Cross-Motion for Judgment on the Administrative Record [hereinafter Def.'s CMJAR], ECF No. 31. On September 22, 2021, plaintiff filed his Reply in Support of his Motion for Judgment on the Administrative Record and Response to the Cross-Motion for Judgment on the Administrative Record. *See* Plaintiff's Reply and Response in Support of its Motion for Judgment on the Administrative Record, ECF No. 34. On October 20, 2021, defendant filed its Reply in Support of its Cross-Motion for Judgment on the Administrative Record. *See* Defendant's Reply in Support of its Cross-Motion for Judgment on the Administrative Record, ECF No. 37. The parties' Motions are fully briefed and ripe for review.

## II. Standard of Review

This Court's jurisdictional grant is primarily defined by the Tucker Act, which provides this Court the power "to render any judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Although the Tucker Act expressly waives the sovereign immunity of the United States against such claims, it "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). Rather, in order to fall within the scope of the Tucker Act, "a plaintiff

must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc* in relevant part).

The Court reviews decisions of military correction boards based upon the administrative record. *Walls v. United States*, 582 F.3d 1358, 1367 (Fed. Cir. 2009). When a party requests judgment on the administrative record under Rule 52.1 of the Rules of the Court of Federal Claims ("RCFC"), the Court makes findings of fact as if it were conducting a trial on the record. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1354 (Fed. Cir. 2005). The Court must determine "whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *A & D Fire Prot., Inc., v. United States*, 72 Fed. Cl. 126, 131 (citing *Bannum*, 404 F.3d at 1356).

There is a deferential standard when reviewing military personnel decisions, and this Court "will not disturb the decision of the corrections board unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Chambers*, 417 F.3d at 1227 (citing *Haselrig v. United States*, 333 F.3d 1354, 1355 (Fed. Cir. 2003)). This standard requires the Court to sustain decisions "evincing rational reasoning and consideration of relevant factors." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000). However, the Court may not "substitute [its] judgment for that of the military departments when reasonable minds could reach different conclusions on the same evidence." *Id*. at 1156. In other words, the Court does not reweigh the evidence, but makes "a determination whether *the conclusion being reviewed* is supported by substantial evidence." *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983) (emphasis in original). Finally, the plaintiff must overcome the presumption of regularity which attaches to actions of the military and military records correction boards. *Armstrong v. United States*, 205 Ct. Cl. 754, 762–63 (1974) (noting that "[p]resumption favors the validity of official military acts," including those of a military records correction board, absent evidence to the contrary).

## III. Discussion

Plaintiff argues that the AFBCMR's decision is contrary to law, as both Air Force and DoD regulations mandate plaintiff's referral into IDES because of his depressive disorder. Pl.'s MJAR at 16–17. Plaintiff further argues that the AFBCMR's decision is unsupported by substantial evidence and ignores evidence in the record that supports his application for relief. *Id.* at 19–20. In response, defendant argues that plaintiff's position runs contrary to AFBCMR's factual findings, which are supported by substantial evidence. Def.'s CMJAR at 12.

The Court is therefore tasked with determining whether the AFBCMR's decision denying plaintiff's requested relief is "supported by substantial evidence on the record considered as a whole." *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). For the Board's decision to be supported by substantial evidence, "all of the competent evidence must be considered . . . and whether or not it supports the challenged conclusion." *Heisig*, 719 F.2d at 1157.

Here, the Court agrees that the AFBCMR's decision is not supported by substantial evidence. The Board fails to explain how the record, when considered in its entirety, supports its conclusions because it did not properly consider all the relevant evidence in the record. *See id.* ("Under the substantial evidence rule, all of the competent evidence must be considered."). In its decision, the AFBCMR "concur[red] with the rationale and recommendation of [the Mental Health] Advisor and the AFPC," and found "*no evidence* [plaintiff's] mental health condition . . . interfered with his ability to reasonably perform his military duties in accordance to his office, grade, rank, nor met criteria for IDES referral." AR 7–8 (emphasis added); *see also* AFI 36-3212 § 8.20. On this basis, the AFBCMR declined to award plaintiff referral into IDES or medical retirement. AR 8. However, the record shows that plaintiff presented favorable evidence to support his case.

The AFBCMR's decision failed to consider the entire record because it ignores relevant evidence in the form of plaintiff's statements regarding his unfitness for duty. *See* AR 8. Under DoD guidance to Boards for Correction of Military/Naval Records, the plaintiff's "testimony *alone*, oral or written, may establish the existence of a fact supportive of relief." AR 234 (emphasis added), *see also* AR 238. Plaintiff stated before the AFBCMR that his "security clearance was revoked due to his mental health condition and without a clearance, he was unable to perform his military duties; therefore, making his condition unfitting for service." AR 8; *see also* AR 6. The AFBCMR agreed that plaintiff's contention is plausible but rejected it because he "failed to provide *any evidence* to support this contention other than his own statement." AR 8 (emphasis added). In other words, the Board did not consider plaintiff's statement because of a lack of corroborating evidence. As this is not a requirement for consideration of plaintiff's testimony, the Board failed to consider relevant evidence.

The AFBCMR also failed to consider the entire record because it cherry-picked which evidence to consider. For the Board's decision to meet the "substantial evidence" standard, it must consider all of the relevant evidence in the record, "whether or not it supports the challenged conclusion." *Heisig*, 719 F.2d at 1157. Here, the Board failed to consider evidence in the record contrary to its conclusion, such as plaintiff's denial of active-duty reenlistment and the termination of his security clearance. *See* AR 6, 77–79, 93–94. Pertinent to a determination of plaintiff's unfitness, the Board should have considered this information. *See Hassay v. United States*, 150 Fed. Cl. 467, 482 (2020) (expecting "the Board to take into account the Army's finding that [plaintiff] did not meet accession standards related to his mental health in deciding [his] fitness for duty."). The Board's decision does not explain why this evidence was not considered. *See* AR 7–8.

Further, the AFBCMR failed to consider relevant evidence when it declined to consider plaintiff's disability ratings as determined by the VA. The AFBCMR should have considered plaintiff's disability rating as relevant evidence in determining whether plaintiff was unfit for duty. *See Heisig*, 719 F.2d at 1157 (stating that VA disability ratings are relevant evidence to be considered in determining unfitness for duty). On separation from the Air Force, plaintiff initially received a 30 percent disability rating, which subsequently increased to 50 percent under the VA disability schedule. AR 66–68, 70, 226. The Board dismissed plaintiff's disability rating, stating that the VA "operat[es] under a different set of law[s]." AR 4. The Board

therefore failed to consider relevant evidence in the form of plaintiff's disability rating when it failed to consider the rating in its findings and conclusion. *See* AR 7–8.

In addition, the AFBCMR based its conclusion on speculation regarding plaintiff's separation from the Air Force. DoD instruction requires the Air Force to "cite objective evidence in the record, as distinguished from personal opinion, speculation, or conjecture, to determine a Service member is unfit because of disability." DoDI 1332.18, Appx. 2 to Encl. 3, § 6. The record does not offer, and the AFBCMR does not assert, a specific reason for plaintiff's separation from the Air Force. *See* AR 7–8. Instead, the Board speculates that plaintiff's "commander more likely than not declined further retention on active duty based on multiple factors, to include performance." AR 8. However, the Air Force records of plaintiff's separation provide no explicit reason for his non-retention and provide no foundation for the Board's conclusion that plaintiff's separation was not, at least in part, due to plaintiff's mental health and related security clearance denial. *See* AR 7, 93–94.

Finally, the AFBCMR failed to consider the decline in plaintiff's performance as evidence of a mental-health condition, as well as the timing of plaintiff's loss of security clearance and his separation from the Air Force. *See* AR 7–8. Pursuant to DoD guidance for considering requests by veterans seeking modification of their discharge due to mental health conditions, the evidence the Board considers "may also include changes in behavior" or "deterioration in work performance." *See* AR 237. As to plaintiff's loss of his security clearance, the sequence of the events regarding the denial of clearance and his subsequent separation from the Air Force would appear to validate plaintiff's argument that his depressive disorder impacted his fitness for duty. Yet, the Board's decision does not reflect consideration of these circumstances. *See* AR 7–8. The Board's failure to consider the decline in plaintiff's performance and the timing of his loss of security clearance was a failure to consider the entire record.

Based on the AFBCMR's failure to consider the entirety of the record before it, the Court is unconvinced that the AFBCMR properly applied the criteria for IDES referral set forth in Air Force and Department of Defense instructions. The Court appreciates the challenging responsibility of the AFBCMR in reviewing difficult cases involving mental-health conditions with limited records. Still, the AFBCMR has a mandate to consider not only whether to correct an error, but also to "grant relief in order to ensure fundamental fairness" so its "[s]tandards of review should rightly consider the unique nature of these cases and afford each veteran a reasonable opportunity for relief." AR 233, 236. The Court finds the AFBCMR's decision unsupported by substantial evidence and unfairly denies plaintiff a reasonable opportunity to demonstrate his eligibility for medical retirement through the IDES evaluation process.

## IV. Conclusion

For the reasons set forth above, the plaintiff's MOTION for Judgment on the Administrative Record, ECF No. 25, is **GRANTED-IN-PART**. Defendant's CROSS-MOTION for Judgment on the Administrative Record, ECF No. 31, is **DENIED**. Plaintiff's first MOTION for Judgment on the Administrative Record, ECF No. 8, is **DENIED AS MOOT**.

Pursuant to RCFC 52.2, the Court **REMANDS** the case to the AFBCMR for a referral into IDES to determine whether plaintiff should have received medical retirement benefits upon separation from the Air Force.

The remand proceedings must be completed within three months of the date of this decision. The parties **SHALL** file a joint report every thirty days advising the Court of the status of the proceedings on remand.

The Court will retain jurisdiction over the case during the course of the proceedings on remand. The Court **STAYS** judicial proceedings during the effectuation of this order.

Pursuant to RCFC 52.2(e), the parties **SHALL** file notice with the Court within thirty days of the AFBCMR's decision on remand stating whether that decision affords a satisfactory basis for the disposition of the case and whether the parties require further proceedings before the Court.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge